IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SIGNTRONIX, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:06-CV-2244-L** |
| | § | |
| **GENERAL SIGN, INC., JIN KIM,** | § | |
| **DISTRIBUTORS, INC., D&K** | § | |
| **DISTRIBUTORS, INC. d/b/a** | § | |
| **SIGN EXPRESS, DARICK ENDECOTT,** | § | |
| **DOUGLAS PACHECO, and DOES 1** | § | |
| **through 100, inclusive**, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are: (1) Defendant's Motion to Dismiss, filed January 16, 2007, and (2) Agreed Motion for Permission to File Brief in Excess of Page Limit, filed May 30, 2007. After carefully considering the motions, response, reply, record, and applicable law, the court **grants in part** and **denies in part** Defendant's Motion to Dismiss and **grants** the Agreed Motion to File Brief in Excess of Page Limit.[1]

**I.     Factual and Procedural Background**

Plaintiff Signtronix, Inc. ("Plaintiff" or "Signtronix") filed its Original Complaint on December 6, 2006, alleging claims of relief for violation of partial consent judgment and consent judgment, partial consent judgment and copyright infringement, violation of the Lanham Act, business disparagement, tortious interference with contractual relationships, violation of Texas

---

[1] The court therefore allows Defendant to file a reply exceeding the 10-page limitation of this court.

**Memorandum Opinion and Order – Page 1**

Business Commercial Code section 16.29, breach of contract, fraud, conspiracy, unfair competition, misappropriation, and declaratory judgment.

Plaintiff alleges that it is a leading manufacturer of plastic illuminated signs and electronic message center signs. Compl. ¶ 3. It contends that its methods of selling its products are proprietary and highly successful. *Id.* Plaintiff asserts that its sign graphics, sign products, and sales and marketing materials are copyrighted. *Id.* ¶ 4. Plaintiff previously brought suits against Defendants General Sign, Inc. ("General Sign") and Jin Kim ("Kim") for copyright infringement and unfair competition, which culminated in a 1997 Consent Judgment and a 1999 Agreed Permanent Injunction and Partial Consent Judgment. *Id.* ¶ 6, Ex. 1, 2. The consent judgments permanently enjoined General Sign and Kim from using Signtronix's sign graphics, sign products, and sales and marketing materials. *Id.* In this action, Plaintiff alleges that Defendants D&K Distributors, Inc. d/b/a Sign Express ("Sign Express"), Darick Endecott ("Endecott"), and Douglas Pacheco ("Pacheco"), with General Sign and Kim, have unlawfully received its confidential and proprietary information and are using Signtronix's proprietary process and copyrighted materials to manufacture and sell sign products. *Id.* ¶ 5.

Signtronix alleges that Defendant Pacheco, a former Signtronix dealer and regional manager, is domiciled in Rensselaer, New York. *Id.* ¶¶ 13, 27, 45. Plaintiff asserts that Pacheco had notice of the consent judgments and knew or is chargeable with knowledge of their terms. *Id.* ¶¶ 17, 21. Pacheco allegedly has acted as a front for the activities of General Sign and Kim in violation of the consent judgment, has recruited and trained dealers for Sign Express, and has processed and manufactured orders for infringing sign products. *Id.* ¶ 23.

Specifically, Plaintiff contends that Pacheco became a dealer for Sign Express. *Id.* ¶ 48. Pacheco allegedly knew that the signs graphics and sales and marketing materials were copyrighted but began using these on behalf of Sign Express. *Id.* ¶¶ 50-51. Plaintiff also alleges that Pacheco solicited and procured orders for signs manufactured by General Sign and Kim that use or infringe on Signtronix copyrights. *Id.* ¶ 53. Plaintiff asserts that Pacheco, with the other Defendants, solicited Signtronix dealers to work for Sign Express, using Signtronix standard forms and agreements. *Id.* ¶ 55. As part of the solicitation, Plaintiff alleges that Pacheco and the other Defendants brought potential dealers to General Sign in Dallas, Texas. *Id.* ¶ 55.1.

Pacheco has moved to dismiss the claims against him for lack of personal jurisdiction. With his motion, he filed an affidavit that stated that he sold "five or six signs for Signtronix in Brownsville, Texas" in November 2005. Mot. Pacheco Decl. ¶ 3. Plaintiff conducted jurisdictional discovery before responding to Pacheco's motion and filed with its response documents and excerpts from Pacheco's deposition that it argues show that the exercise of personal jurisdiction over him is warranted. Pacheco filed an Amended Declaration, dated March 23, 2007, in which he stated that he had reviewed travel records and now declared that he had visited Texas on October 3, 2004 and June 2, 2005, that he had a meeting with Endecott in Dallas in April 2006, and that he visited Texas in October 2006 for Sign Express training. Pacheco Am. Decl. ¶¶ 4-8. Pacheco maintains that even these contacts are insufficient to support this court's exercise of personal jurisdiction over him.

## II. Legal Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192

(5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro*

*Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

**III.    Analysis**

Pacheco moves to dismiss Signtronix's claims against him because he argues that the court cannot exercise general or specific personal jurisdiction over him. Plaintiff responds that Pacheco lied in his affidavits submitted to the court and that he has contacts with Texas sufficient for the exercise of general or specific jurisdiction. With its response, Plaintiff filed an appendix containing affidavits, deposition testimony, and other evidence it contends shows Pacheco's links to this jurisdiction. Pacheco objects to declarations filed by Signtronix in support of its response and asks the court to strike them.

**A.    Pacheco's Objections to Signtronix Declarations**

Before reaching the merits of Pacheco's motion, the court considers his objections to three pieces of evidence submitted by Signtronix in support of the exercise of personal jurisdiction. Pacheco argues that the declarations of Milton Mannix, Tom Johnson, and Tom Boren are inadmissible and should be stricken because the declarants do not have personal knowledge of all the statements in the declarations. The declarations are based upon the declarant's personal knowledge "except as to those facts which I state to be true on information and belief as to which facts I believe to be true." Pl. App. 362 (Mannix Decl. ¶ 1), 308 (Johnson Decl. ¶ 1), 326 (Boren Decl. ¶ 1).

The court may consider additional evidence, including affidavits, when determining whether a plaintiff has made a prima facie case for personal jurisdiction, but:

> Plaintiff must make more of a showing of minimum contacts than merely making conclusory statements that jurisdiction exists. Generally, relying solely on unverified hearsay evidence will not pass the muster of the due process requirements. This is particularly true when the nonresident defendant puts on equally compelling evidence to rebut the conclusory allegations.

*Farmer Boys' Catfish Kitchens Int'l, Inc. v. Golden West Wholesale Meats, Inc.*, 18 F. Supp. 2d 656, 661-62 (E.D. Tex. 1998) (internal citations omitted); *see also Product Promotions v. Cousteau*, 495 F.2d 483, 493 (5th Cir. 1974), *overruled on other grounds*, *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702-03 (1982), *as stated in Burstein v. State Bar of California,* 693 F.2d 511, 518 n.12 (5th Cir. 1982)) (holding that "hearsay testimony" regarding jurisdictional facts "does not suffice"); *Kern v. Jeppesen Sanderson, Inc.*, 867 F. Supp. 525, 535 (S.D. Tex. 1994). The court also notes that many of the statements in the declarations either corroborate the uncontroverted allegations of Plaintiff's Complaint or are not themselves contested by Defendant.

Pacheco objects to the Mannix declaration because it contains unidentifiable hearsay testimony. Mannix's declaration details alleged events and conversations between Pacheco and Mark Rathburn. The court determines that Pacheco's objections are well taken; the declaration does not identify Rathburn or explain how Mannix learned of the facts outlined in his declaration. Accordingly, Pacheco's objections to the Mannix declaration are **sustained**.

Defendant argues that the Johnson declaration also contains facts that are not within the declarant's personal knowledge. Unlike the Mannix declaration, however, the Johnson declaration contains citations to evidence that have been submitted to the court or references the source of his

information, Signtronix regional managers who currently work for the company. Johnson's declaration also sets out his history and role within the company. The court determines that this document provides a sufficient basis for his knowledge of the facts set out in the declaration; Johnson's declaration is more than "unverified hearsay." Accordingly, Defendant's objections to the Johnson declaration are **overruled**.

Pacheco also objects to the Boren declaration, arguing that the declaration does not establish the basis for Boren's opinions or provide documentation of the source of the documents attached to the declaration. The declaration does provide the source of the documents and the amount of time Boren and his staff spent analyzing the documents. Moreover, many of the documents referred to in the declaration are included in Plaintiff's appendix. The court determines that the Boren declaration is more than "unverified hearsay" because Boren stated the basis for his knowledge and attached substantiating evidence to the declaration. Accordingly, Pacheco's objections to the Boren declaration are **overruled**.

### B. General Jurisdiction

Pacheco argues that the court may not exercise general jurisdiction over him, because his contacts with Texas are limited. Signtronix responds that Pacheco has had repeated contact with Texas since 2004 and his contacts increased in 2006 as part of his relationship with General Sign and Sign Express.

The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Helicopteros Nacionales*, 466 U.S. at 414 n. 9. "Cases involving general jurisdiction suggest that the threshold contacts required for assertion of such jurisdiction are very

substantial." *Davis v. Billick*, 2002 WL 1398560, *3 (N.D. Tex. June 26, 2002) (citing *Helicopteros Nacionales,* 466 U.S. at 416-19; *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1362-63 (5th Cir. 1990); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 376 (5th Cir. 1987)).

The court determines that although Signtronix has established that Pacheco has had contacts with the state of Texas dating back to 2004, these contacts are not the "continuous, systematic, and substantial" contacts required for a finding of general jurisdiction. Accordingly, the court may not exercise general jurisdiction over Defendant Pacheco.

### C. Specific Jurisdiction

Defendant argues that Signtronix cannot establish specific jurisdiction over him because his contacts with Texas are insufficient. Signtronix responds that Pacheco has admitted to contacts with this jurisdiction sufficient for specific jurisdiction. In his reply, Pacheco attacks the sufficiency of Signtronix's claims against him and argues that none of the alleged contacts is enough for this court's exercise of specific jurisdiction over him.[2]

The Fifth Circuit has recently held that the court must consider each of plaintiff's claims individually when determining whether specific jurisdiction over a defendant exists. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ("A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."). Before reaching each of the claims brought by Plaintiff against Pacheco, the court determines what contacts it may consider in analyzing the specific jurisdiction issue.

---

[2]Pacheco has not moved pursuant to Rule 12(b)(6) to dismiss for failure to state a claim. Many of Defendant's arguments as to legal sufficiency of Plaintiff's claims are raised for the first time in Pacheco's reply, and the court previously held that it would not consider such arguments. Order (June 22, 2007), 1 ("To the extent that Defendant Pacheco raises arguments in his reply that were not previously raised in his motion, the court will not consider them.").

**Memorandum Opinion and Order – Page 9**

### 1. Plaintiff's Contacts with Texas

Pacheco's contacts with Texas include his visits to the state and his alleged sales in Texas and to Texas customers. Signtronix also argues that Pacheco has engaged in tortious activity while in Texas that is directed at the forum and justifies this court's exercise of personal jurisdiction over him. The court may consider not only a plaintiff's complaint, but also affidavits and deposition testimony. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion*, 895 F.2d at 217.

The court first determines which of Signtronix's allegations against Pacheco remain uncontroverted.[3] Pacheco specifically denies any knowledge of the 1997 consent judgment or 1999 permanent injunction and partial consent judgment. Pacheco Am. Decl. ¶¶ 16-17. Many of Plaintiff's other allegations are not specifically denied by Pacheco. Signtronix pleaded that Pacheco acted as a front for the activities of General Sign and Kim in violation of the consent judgment, recruited and trained dealers for Sign Express, and processed and manufactured orders for infringing sign products. Compl. ¶ 23. Plaintiff contends – and Pacheco admits – that he became a dealer for Sign Express. *Id*. ¶ 48; Pacheco Am. Decl. 6. Pacheco admits that he formerly worked for Signtronix and that he signed a dealership agreement with that company. Pacheco Am. Decl. ¶ 3. Signtronix alleges that as a former Signtronix dealer, Pacheco knew that its signs graphics and sales and marketing materials were copyrighted but began using these on behalf of Sign Express. Compl. ¶¶ 50-51. Plaintiff contends that Pacheco solicited and procured orders for signs manufactured by General Sign and Kim that use or infringe on Signtronix copyrights. *Id*. ¶ 53. Plaintiff also asserts

---

[3]Pacheco has not filed an answer in this case, so the court looks to the evidence submitted by Pacheco in support of his motion to dismiss to determine which of Signtronix's allegations have been challenged.

**Memorandum Opinion and Order – Page 10**

that Pacheco solicited Signtronix dealers to work for Sign Express, using Signtronix standard forms and agreements. *Id.* ¶ 55. As part of the solicitation, Plaintiff alleges that Pacheco and the other Defendants brought potential dealers to General Sign in Dallas, Texas. *Id*. ¶ 55.1.

The court now turns to the evidence submitted by the parties. Pacheco admits that he visited Brownsville, Texas in January 2006 and states that he sold five or six signs on behalf of Signtronix. Pacheco Am. Decl. ¶ 4. He also admits visiting Texas, working for Signtronix, on October 3, 2004 and June 2, 2005. *Id*. ¶ 5. He states that he had a meeting in Dallas, Texas with Endecott in April 2006 and that he visited Texas in October 2006 "for training for Sign Express in the sale and manufacture of LED lighted signs." *Id*. ¶¶ 7-8.

Plaintiff alleges that the quantity and extent of Pacheco's contacts with Texas are far greater than those admitted to in his amended declaration. Signtronix has provided the court with excerpts of Pacheco's deposition testimony discussing additional contacts with this jurisdiction. Pacheco admitted that he spent twenty-eight days or nights in Texas in 2006, sixteen of which involved Sign Express business. Pl. App. 130-31. He testified that he sold eight signs in Texas for Sign Express, including selling signs in Texas in April, October, and November 2006. *Id*. at 113, 117-18, 123.1-24, 129. He also admits that he had a meeting at General Sign and received some training. *Id*. at 122. Pacheco testified that in October 2006, he attended a Sign Express meeting with Endecott and others discussing Sign Express business. *Id*. at 127-28.

Signtronix has also provided evidence and declarations relating to Pacheco's contacts with Texas. According to Boren, Plaintiff's Vice President of Operations, Pacheco, Sign Express, and General Sign produced documents to Plaintiff, and Boren and his staff have reviewed and processed these documents. Boren Decl. ¶ 4. Boren stated, based upon his review of the documents, that

**Memorandum Opinion and Order – Page 11**

Pacheco procured eight orders for signs for Sign Express from customers located in Texas. *Id*. ¶ 13. The value of these sales exceeds $19,000. *Id*. Boren's review also lead to his conclusion that Pacheco's sales for Sign Express involved at least 30 signs manufactured in Texas and shipped to customers from Texas. *Id*. ¶ 12. Boren also stated that Sign Express has used, in whole or part, Signtronix agreements and forms in approximately 750 transactions. *Id.* ¶ 11.

Johnson, the President of Signtronix, also submitted a declaration in support of Plaintiff's opposition to Pacheco's motion to dismiss. Johnson stated that Pacheco had worked not only as a dealer and regional manager for Signtronix, but also acted as a corporate trainer for regional managers, district managers, and dealers. Johnson Decl. ¶ 5. He also stated that he personally had a number of conversations with Defendant about the copyrighted sales and marketing materials and dealer agreements and that Pacheco had received notices from Signtronix about the enforcement of its copyrights. *Id*. ¶¶ 9-11. Johnson compared certain Sign Express documents to Signtronix copyrighted agreements and documents and stated that the agreements are substantially similar, and in some cases, identical. *Id*. ¶¶ 13, 15-17. He refers to the Sign Express orders that demonstrate that Pacheco made at least eight sales in Texas during 2006. *Id*. ¶ 14. Johnson states that current Signtronix dealers have informed him that Pacheco joined Sign Express without informing Plaintiff and that he plays a key role in recruiting former Signtronix dealers for Sign Express. *Id*. ¶ 19.

With his reply, Pacheco filed an affidavit from Defendant Endecott relating to the way Sign Express conducts its business. Endecott stated that the company employs independent contractors to sell its products. Endecott Decl. ¶ 2. Once an order is obtained, the contractor sends the order and the proposed sign to Sign Express's headquarters in Iowa, where the information is used to

create a manufacturer-specific purchase order. *Id*. ¶ 3. Endecott stated that the independent contractors have no direct contact with the sign manufacturer. *Id*. ¶ 7.

### 2. Plaintiff's Claims Against Pacheco

Signtronix has asserted the following claims against Defendant Pacheco: (1) violation of partial consent judgment and consent judgment; (2) partial consent judgment and copyright infringement; (3) violation of the Lanham Act; (4) tortious interference with contractual relationships; (5) conspiracy; (6) unfair competition; and (7) misappropriation.[4] Although substantial overlap in the facts underlying these claims exist, to the extent there are separate allegations supporting each claim, the court addresses them in turn.

#### a. Violation of Partial Consent Judgment and Consent Judgment

Signtronix argues that Pacheco knew or can be charged with knowledge of the consent judgment and partial consent judgment and he is therefore liable for violation of the partial consent judgment as an "affiliated sales and marketing person for" and "agent" of General Sign and Kim. Compl. ¶¶ 60, 61.4. Pacheco specifically denies any knowledge of the consent judgment or permanent injunction and partial consent judgment. Plaintiff has not pointed to any evidence or uncontroverted allegation that rebuts Pacheco's declaration. Because Signtronix's first claim is based upon violation of the partial consent judgment and consent judgment and because the only evidence before the court challenges Plaintiff's allegation, the court determines that there are no contacts with Texas that would warrant this court's exercise of personal jurisdiction over Pacheco for this claim.

---

[4]Signtronix also asserts as claims for relief declaratory judgment and attorney's fees. Because these claims depend on Plaintiff's other claims, the court does not specifically address these claims in this context.

**Memorandum Opinion and Order – Page 13**

### b. Violation of Partial Consent Judgment and Copyright Infringement

Plaintiff's second claim alleges that it has complied with the Copyright Act, and that General Sign and Kim have acknowledged the validity of Signtronix's copyrights. Compl. ¶¶ 63-64. Plaintiff also alleges that Defendants have infringed upon its copyrights by using, copying, and making derivative works of them, and selling and distributing copies of Signtronix's copyrighted sign graphics and sales and marketing materials. *Id*. ¶ 67. Although the court has determined that Pacheco has denied knowledge of the partial consent judgment, Signtronix has alleged that Pacheco had knowledge of Signtronix's copyrights through his prior employment, that Sign Express used copyrighted sales and marketing materials, and that Pacheco made sales on behalf of Sign Express in Texas.[5] Accordingly, the court determines that personal jurisdiction over Pacheco for this claim is warranted.

### c. Lanham Act

Signtronix alleges that Defendants violated the Lanham Act, and with respect to Pacheco, that he used the Signtronix EYCOM trademark for a Red Wing Shoes sign on behalf of Sign Express. Pacheco argues that Signtronix has not asserted a claim for trademark infringement, but Signtronix has clearly pleaded a claim for violation of the Lanham Act and the underlying allegations remain uncontroverted. Compl. ¶¶ 74-81. "A single sale of a trademarked product in violation of the Lanham Act in the forum is sufficient to establish personal jurisdiction." *Autotronic Controls Corp. v. Davis Techs., LLC*, 2005 WL 1683595, *2 (W.D. Tex. July 1, 2005).

---

[5] Pacheco has not denied Signtronix's allegations regarding the use of its copyrighted sales and marketing materials, but argues in his reply that the copyright claim fails because the materials are not copyrightable. As this argument was made for the first time in his reply, the court does not consider it. *See* Order (June 22, 2007).

**Memorandum Opinion and Order – Page 14**

Accordingly, the court concludes that it may exercise personal jurisdiction over Pacheco for this claim.

### d. Tortious Interference with Contractual Relationships

Signtronix's tortious interference claim alleges that Defendants have disparaged Signtronix in an effort to solicit its dealers to work for Sign Express. Compl. ¶¶ 86- 91. The Johnson affidavit submitted by Plaintiff provides evidence that Pacheco is working to recruit current Signtronix dealers for Sign Express, and Pacheco himself has admitted attending meetings in Texas to discuss Signtronix business and for training.[6] The complaint alleged that Pacheco brought Signtronix dealers to Dallas to recruit them as dealers for Sign Express. *Id*. ¶ 55.1. The court concludes that Plaintiff has alleged sufficient contacts for the court to exercise jurisdiction over Pacheco for this claim.

### e. Conspiracy

Signtronix alleges that Defendants engaged in a conspiracy to infringe its copyrights, tortiously interfere with its contractual relationships, to commit violations of the Lanham Act, and to commit acts of unfair competition. Compl. ¶ 108. Pacheco argues that the court may not impute his alleged coconspirator's contacts to him, and for that reason, there is no jurisdiction over him for this claim. The court, however, has found that Signtronix has alleged sufficient contacts in Texas for Pacheco himself that the court does not need to look to his coconspirators' contacts with Texas. Accordingly, personal jurisdiction over Pacheco for this claim is proper.

---

[6]Pacheco again argues that the tortious interference claim fails as a matter of law. This argument was raised for the first time in his reply and is therefore not considered by the court. *See* Order (June 22, 2007).

**Memorandum Opinion and Order – Page 15**

####   f.     Unfair Competition

Signtronix has alleged that Defendants have unfairly competed by using Signtronix's proprietary process. Compl. ¶ 113. Pacheco argues that Signtronix has not alleged any independent tort to underlie its unfair competition claim. Plaintiff has alleged that Pacheco sold sign products on behalf of Sign Express in Texas and that he used Signtronix's copyrighted graphics and sales and marketing materials. The court determines that these contacts are sufficient for the exercise of personal jurisdiction over Pacheco for this claim.

####   g.     Misappropriation

Signtronix has alleged that Defendants misappropriated its intellectual property, including its copyrighted sales and marketing materials.[7] The court finds that Plaintiff has alleged that Pacecho used its copyrighted materials in Texas, and accordingly, specific personal jurisdiction for this claim exists.

### D.     Due Process

Having established that the exercise of specific jurisdiction over Pacheco is proper for most of Signtronix's claims, the court turns to Defendant's argument that forcing him to defend this suit in Texas would offend traditional notions of fair play and substantial justice. Once minimum contacts have been established, however, it is a "rare case" in which a court will conclude that the exercise of personal jurisdiction will offend such notions. *Eviro Petroleum*, 79 F. Supp.2d at 725. As Signtronix points out, Defendant did not even address the fairness inquiry in his motion, and the court does not consider his arguments on this point raised in his reply. *See* Order (June 22, 2007).

---

[7] Pacheco argues that as a former employee of Signtronix, he was able to use the skills, knowledge, and experience he acquired working for Plaintiff. The court need not address this argument, raised for the first time in the reply, but even if it did, Signtronix has alleged the appropriation and use of its graphics and documents.

Even if the court were to consider the arguments raised by Pacheco in his reply, the court determines that he fails to make a compelling case that the exercise of personal jurisdiction over him would be unreasonable or otherwise offend notions of fair play and substantial justice. Accordingly, the court concludes that for the claims for which Signtronix has made a prima facie case of minimum contacts, the exercise of personal jurisdiction over Pacheco will not violate due process concerns.

### IV.    Conclusion

For the foregoing reasons, the court determines that the exercise of personal jurisdiction over Defendant Douglas Pacheco is proper. Accordingly, the court **grants in part** and **denies in part** Defendant's Motion to Dismiss. Specifically, the court has personal jurisdiction over Defendant Pacheco for the following claims: partial consent judgment and copyright infringement, violation of the Lanham Act, tortious interference with contractual relationships, conspiracy, unfair competition, misappropriation, declaratory judgment and attorneys' fees. The court **dismisses without prejudice** Signtronix's claim for violation of partial consent judgment and consent judgment against Defendant Pacheco. The court **grants** the Agreed Motion to File Brief in Excess of Page Limit.

**It is so ordered** this 22nd day of August, 2007.

Sam A. Lindsay
United States District Judge